***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
3. The appointment of any party who appears in a representative capacity is valid and said party has duly qualified and that no additional proof of appointment or capacity shall be required.
4. In addition to other stipulations contained herein, the parties stipulate and agree with respect to the following undisputed facts:
 a. An employee-employer relationship existed between the plaintiff and defendant-employer.
 b. On February 10, 1997, the parties were subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
 c. Insurance coverage is provided by Zenith Insurance Company (formerly Riscorp).
 d. The alleged injury giving rise to plaintiff's claim occurred on February 10, 1997.
 e. On said date plaintiff was earning an average weekly wage of $292.00.
5. Documents stipulated into evidence include the following:
 a. Deposition transcripts of Dr. William O. Bell, taken October 19, 1998 and Dr. John T. Hayes, taken June 10, 1998;
 b. Stipulated Exhibit #1 — Plaintiff's medical records — 203 pages
 ***********
Based upon the competent evidence of record, the undersigned makes the following
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 40 years old with a 10th grade education. His work history included being a line foreman, sanding and painting logging equipment, and selling souvenirs at a vendor stand at Nascar race tracks.
2. Plaintiff was employed with the defendant-employer as a spot welder. His job duties included welding panels into free-standing electrical boxes. The panels weighed between 75-100 pounds, and he worked alone on these projects.
3. On or about February 10, 1997, having been employed for approximately three weeks, plaintiff was bending over putting in panels when he felt a burning sensation in his lower back, along the beltline and buttocks area. Plaintiff continued working, but the pain became worse.
4. Plaintiff reported the incident to his supervisor, Mr. Johnny Freeman, and he was escorted to first aid to lie down for about an hour. On February 11, 1997, plaintiff was taken to Dr. Jerry Ziglar, the company physician. Dr. Ziglar's medical notes indicate, "On Friday, he [plaintiff] was lifting some very heavy stuff and his back has been hurting a lot since then." At the time, plaintiff denied any specific injury. Dr. Ziglar's notes further indicate that the plaintiff was not accustomed to strenuous work. Dr. Ziglar's assessment was low back strain and muscle strain with myalgia, he gave plaintiff pain medications and anti-inflammatories, and he sent plaintiff back to work to return to his regular duties.
5. As of plaintiff's visit with Dr. Ziglar on February 24, 1997, plaintiff was still experiencing back pain, so a CT scan of the lumbar spine was ordered. The results of the scan revealed suspicion of a mild central herniated disc at the L5-S1 level. An MRI was suggested to confirm the abnormality; however, the defendants denied authorization for the same and then filed a Form 61, Denial of Workers' Compensation Claim, dated February 28, 1997.
6. On March 6, 1997, plaintiff independently sought medical treatment from Dr. John T. Hayes, an orthopedic surgeon who had previously repaired a commuted fracture of plaintiff's left clavicle several years prior. Plaintiff relayed a history of lifting heavy metal panels on February 10, 1997.
7. On examination, plaintiff was stooped over and could not stand up straight, and tended to tilt to one side. He had marked loss of mobility of his lower back and was tender over the lumbosacral segment of his back. Plaintiff had acutely positive straight leg raising on the left side, and the neurological exam revealed irritation of either the fourth or fifth lumbar nerve roots on the left side.
8. Dr. Hayes' diagnosis was a rupture of the 5th lumbar disc caused by plaintiff's heavy lifting at work. Dr. Hayes outlined a program of conservative care to allow the disk an opportunity to heal itself, including medication and bed rest for two weeks.
9. Plaintiff informed Ms. Betty Royal with defendant-employer of his out-of-work status. Since plaintiff was still under a 60-day probationary status, the defendant-employer was unable to hold plaintiff's job available to him, but welcomed him to re-apply once his back was healed.
10. Dr. Hayes saw plaintiff again on March 10, 1997, and he had slightly less back pain but the sciatica, or pain down through the left buttock and left thigh were still quite severe. On April 21, 1997 plaintiff's pain was more intense, going down into his left foot and crossing over to the right side. At this time it appeared the plaintiff was not going to get well with conservative treatment so Dr. Hayes suggested that they go forward with a laminectomy and remove the bulging portion of the disk. This surgery was performed on May 2, 1997.
11. Dr. Hayes followed-up with plaintiff on May 12, 1997 at which time plaintiff's wound was healed and he felt quite good with some soreness in his leg. By May 22, 1997 plaintiff was having some intermittent back pain and left leg pain and described some occasional "popping" in his back. As of June 19, 1997 plaintiff had made a good recovery; however, the plaintiff was having weakness of both of his legs. Plaintiff was becoming fatigued easily, wasn't sleeping well, and Dr. Hayes thought plaintiff was "depressed emotionally."
12. On September 2, 1997, the plaintiff came in complaining of stabbing, severe pain in the incision site and left buttock and leg pain. An MRI was taken which only showed a normal amount of scar tissue in the surgical site and no evidence of a new disk herniation. Dr. Hayes last saw the plaintiff on October 6, 1997. Dr. Hayes testified that during the time period he treated the plaintiff, the plaintiff was disabled to go back to lifting the heavy metal plates that plaintiff had described to him. It was also Dr. Hayes' opinion that plaintiff should be retrained to do a less manual type job. Dr. Hayes opined that plaintiff's injuries stemmed from his on-the-job injury and that plaintiff had sustained a five-percent permanent partial disability rating to his back.
13. Due to plaintiff's continued pain in his back, he was not able to return to work or earn wages. Plaintiff sought medical treatment from Dr. Kenneth E. Wood, an orthopedic surgeon, on May 13, 1998. Upon examination Dr. Wood found that plaintiff had persistent disc prominence at L5-S1 and was experiencing discogenic back pain at L5-S1 with left side sciatica. Plaintiff had been in pain since the fall of 1997. Dr. Wood recommended an anterior interbody fusion with BAK cages.
14. Plaintiff sought a second opinion with Dr. William O. Bell, a board certified neurosurgeon. Dr. Bell examined the plaintiff on July 21, 1998. Plaintiff was slightly overweight, did show evidence of decreased straight leg raising on the left compared to the right, and there were postoperative changes at L5-S1 on the left side with a residual S1 radioculopathy secondary to the scar tissue from the original surgery. An MRI scan done in April, 1998 showed postoperative changes on the left side at L5-S1 and some evidence of a midline herniated disk at L5-S1 with impingement on the left S1 nerve root, and there appeared to be some scar tissue around the nerve root previously operated upon by Dr. Hayes.
15. Dr. Bell felt that plaintiff had a failed back syndrome. In essence, plaintiff had made an attempt at standard decompressive surgery that failed which resulted in persistent symptoms in the back and leg or legs due to either a recurrent ruptured disk or instability at that level. As a result, Dr. Bell recommended a fusion of that level with a fusion cage.
16. Plaintiff underwent the recommended surgery on August 7, 1998, and plaintiff continued to follow-up with Dr. Bell following the surgery. Dr. Bell gave an opinion that the plaintiff was not able to work in the current shape he was in when Dr. Bell treated the plaintiff on October 5, 1998. Plaintiff was doing reasonably well, but he still had a lot of symptoms in his left leg.
17. Dr. Bell testified that a fusion takes anywhere from six to twelve months of postoperative recovery, and that plaintiff would probably be disabled for approximately one year from the time of the surgery. Dr. Bell also opined that the lifting injury plaintiff sustained on February 10, 1997 was the cause of plaintiff's back pain, his L5-S1 herniation and the resulting medical treatment.
18. Dr. Bell continued treating plaintiff and by April 8, 1999 plaintiff was still experiencing symptoms in his back. Dr. Bell had recommended physical therapy at a January visit but the plaintiff had to stop this because it caused too much pain. At that point he had some pain in his neck and between his shoulder blades. Dr. Bell ordered x-rays, provided some cervical traction and a prescription for Vicodin.
19. By the July 26, 1999 visit, plaintiff had numbness in his feet. He had relief from his neck pain with the traction and was getting massage therapy and using a TENS unit. In October, 1999 plaintiff complained of back and leg symptoms. Dr. Bell recommended an MRI scan and some lumbosacral spine x-rays that were necessary for plaintiff's care and treatment. The MRI scan and x-ray showed that the cages were in good position and there was some scar tissue around the thecal sac, which contains the nerve roots. The neck x-rays were normal.
20. In a letter to defense counsel dated July 6, 2000, Dr. Bell indicated that plaintiff had reached maximum medical improvement, and he assigned a disability rating of fifteen percent (15%) of the back. Dr. Bell also indicated that plaintiff's work restrictions would have to be determined by a functional capacities evaluation, preferably administered by a physical therapist. No functional capacities evaluation was ever performed on the plaintiff. Furthermore, based on plaintiff's continued complaints of pain in his back and both legs, Dr. Bell later changed plaintiff's disability rating to twenty-five percent (25%) of the back.
21. As of his last visit with plaintiff on March 30, 2001, Dr. Bell testified that he believed the plaintiff was still disabled to perform duties such as working at Austin Company doing manual labor and welding. Dr. Bell estimated that the plaintiff's work restrictions would probably fit into a sedentary category or light physical demand level, the maximum he thought the plaintiff would be able to tolerate. Additionally the services rendered by Dr. Bell, including the second surgery, were reasonably necessary to treat the plaintiff's back condition.
22. Having weighed all the hearing testimony, in conjunction with the medical evidence submitted in this matter, the Deputy Commissioner gave more weight to plaintiff's testimony and found that plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer on or about February 10, 1997, said accident resulting in an injury to plaintiff's back. Minor inconsistencies in plaintiff's recitations of the occurrence of events that transpired on the date of injury are acknowledged; however, these inconsistencies are not to the extent that the Deputy Commissioner believed plaintiff's testimony to be incredible. The Full Commission declines to reverse the credibility determination by the Deputy Commissioner and finds that plaintiff did, in fact, sustain an injury by accident on or about February 10, 1997.
23. As a result of said injury by accident, coupled with plaintiff's vocational and educational limitations, plaintiff was unable to earn wages in any employment from March 6, 1997 through the date of the hearing and continuing through the present. Even though plaintiff reached maximum medical improvement on or about July 6, 2000, plaintiff's back condition continued to worsen, and he nonetheless remained unable to earn any wages.
24. No new information was presented with respect to plaintiff's average weekly wage during the trial before Deputy Commissioner Stanback; therefore, based on the Opinion and Award issued by Deputy Commissioner Richard Ford on January 14, 2000, and based on the Trial Order entered prior to the original hearing, plaintiff's average weekly wage at the time of his injury was $292.00.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On or about February 10, 1997, plaintiff sustained an injury by accident to his back which arose out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. As a direct and proximate result of plaintiff's work-related injury by accident on or about February 10, 1997, plaintiff sustained an injury to his back, and requires further medical treatment and supplies. N.C.G.S. § 97-25.
3. Plaintiff's average weekly wage was $292.00 yielding a compensation rate of $194.76 per week. N.C.G.S. § 97-2(5).
4. Plaintiff reached maximum medical improvement as a result of his compensable injury on or about July 6, 2000 at which time Dr. Bell released plaintiff with a 25% permanent partial disability of the back; however, from March 6, 1997 and continuing after reaching maximum medical improvement, plaintiff has been unable to earn any wages with defendant-employer, or with any other employer offering work for which plaintiff is vocationally suited. N.C.G.S. § 97-29.
5. Plaintiff is entitled to payment by the defendants of medical, surgical, hospital, nursing services, medicines, sick travel, and other treatment, including medical and surgical supplies as may be reasonably required to effect a cure or give relief. N.C.G.S. § 97-25.
6. As a result of his compensable injury on or about February 10, 1997, plaintiff is entitled to receive a functional capacities evaluation and vocational rehabilitation services to assist plaintiff in returning to productive employment, payable by the defendants. N.C.G.S. § 97-25.
7. From and after March 6, 1997, plaintiff was and remains incapable because of his work-related back injury which he sustained and the resultant pain, to earn wages which he was receiving at the time of his injury at the same or any other employment. As such, plaintiff is entitled to receive temporary total disability compensation payable by the defendants at the rate of $194.76 per week and continuing until further Order of the Industrial Commission. N.C.G.S. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his temporary total disability compensation, defendants shall pay plaintiff at the rate of $194.76 per week from and after March 6, 1997 and continuing thereafter at the same rate, until further Order of the Industrial Commission. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to a reasonable attorney fee, approved in Paragraph 2.
2. A reasonable attorney fee in the amount of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
3. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury. Payment shall be made when bills for the same shall have been submitted to the Industrial Commission for approval.
4. Defendants shall provide and plaintiff shall accept vocational rehabilitation services to assist plaintiff in returning to productive employment, once a Functional Capacity Evaluation has been performed as recommended by Dr. Bell.
5. Defendants shall bear the costs.
This the ___ day of August 2002.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/__________________ THOMAS J. BOLCH COMMISSIONER
S/__________________ RENE C. RIGGSBEE COMMISSIONER